UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK MODESTO DURAN SIMON,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Attorney General of the United States, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03615-JNW<br><br>ORDER GRANTING HABEAS PETITION IN PART |

Frank Modesto Duran Simon's petition for a writ of habeas corpus comes before the Court. Dkt. No. 1. The Court GRANTS the petition IN PART and orders his release for the reasons below.

## 1. BACKGROUND

Duran Simon fled Cuba in 1994 and arrived in the United States in 1995. He was paroled into the country and later became a Lawful Permanent Resident. Dkt. No. 5 ¶¶ 5, 7. In August 2004, Duran Simon was convicted of a drug offense and received a custodial sentence in Nevada. Dkt. No. 5 ¶ 9. When his state sentence ended, Immigration and Customs Enforcement (ICE) detained him, served him with a notice to appear in Immigration Court, and placed him in removal proceedings. *Id.*

¶ 11. On September 15, 2009, he was ordered removed from the United States to Spain, and to Cuba in the alternative. *Id.* ¶ 12. The order is administratively final. *Id.* In November 2009, Spain declined to issue a travel document for Duran Simon. *Id.* ¶ 13. Unable to remove him, ICE released him on an order of supervision ("OSUP") the following month. *Id.* ¶ 14. On August 25, 2017, ICE detained Duran Simon for one day in Las Vegas, then released him on another OSUP. *Id.* ¶ 15.

On February 6, 2026, Canadian border officials turned Duran Simon over to ICE after he tried to enter Canada, and ICE transferred him to the Northwest ICE Processing Center, ("NWIPC"). *Id.* ¶¶ 20, 21. It is undisputed that since his re-detention, Cuba has refused to repatriate him. He says that despite seven months of detention, ICE has never asked him to assist in obtaining travel documents. Dkt. No. 1 at 3. The Government does not refute that assertion, nor does it state that it intends to get travel documents for him.

On March 10, 2026, the Government says it transferred Duran Simon to Arizona for third-country removal to Mexico; it also says that on March 19, Duran Simon "refused to be removed to Mexico." Dkt. No. 5 ¶¶ 24–25. The Government does not specify how it tried to "remove" Duran Simon, nor does it explain what he did to "refuse" removal. Nor does it say whether Mexico agreed to receive him. ICE then returned him to NWIPC. *Id.* ¶ 26.

Over the following months, Duran Simon twice told ICE he would accept removal only to Cuba, and he refused to sign a Form I-299(a) Warning for Failure to Depart. *Id.* ¶¶ 27–29. On August 3, 2026, he told ICE he would accept removal to Mexico. *Id.* ¶ 31. But on September 8, he said he would not go while he pursued a

habeas petition, though he would go if the petition were denied, and he refused to sign a notice of removal to Mexico. *Id.* ¶¶ 32–33.

The Government says that "Mexico will accept Cuban citizens if they depart to Mexico voluntarily[.]" *Id.* ¶ 34. It is undisputed that Duran Simon is unwilling to go to Mexico at this time. Dkt. No. 7 at 6. Thus, as a factual matter, the Court finds that ICE has *not* attempted to remove Duran Simon to Mexico with the Mexican government's agreement or a travel document from that government. Instead, it has sought his content to go there voluntarily. He remains detained at NWIPC.

## 2. LEGAL STANDARD

### 2.1 Habeas corpus.

District courts grant writs of habeas corpus to those who demonstrate their custody violates the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting, *INS v. St. Cyr*, 533 U.S. 289, 302, (2001)). Petitioner bears the burden of proof by a preponderance of the evidence. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1418–19 (9th Cir. 1994)). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**2.2 Equitable relief.**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman,* 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## 3. DISCUSSION

Duran Simon raises multiple legal challenges to his detention; he asks for release, as well as various injunctive relief discussed in more detail below. The Court addresses his claims in turn and finds as follows.[1]

### 3.1 Duran Simon's detention violates 8 U.S.C. § 1231(a)(6) under *Zadvydas*.

When a noncitizen receives a final order of removal, they become subject to a statutory, 90-day removal period under 8 U.S.C. § 1231(a)(1). Generally, the Government detains the noncitizen during that 90-day removal period. *See* 8 U.S.C. § 1231(a)(2). Once the removal period has expired, a separate provision of the same statute, Section 1231(a)(6), authorizes the Government to continue detention or to release the noncitizen subject to supervision. 8 U.S.C. § 1231(a)(6). But the discretionary authority provided by Section 1231(a)(6) is not unlimited. In *Zadvydas*, the Supreme Court held that the statute "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Six months is the presumptive ceiling for reasonable detention under Section 1231(a)(6). *Id.* at 701. The burden is on the noncitizen to show "that there is

[1] Because the Court grants the petition on other grounds, it need not consider Duran Simon's claim that his detention violates the Administrative Procedures Act and declines to do so.

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (citation modified) (quoting *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003)). The burden then shifts to the Government to rebut that showing. *Zadvydas*, 533 U.S. at 701. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

The Government's return raises another provision in the same statutory scheme, Section 1231(a)(1)(C). It states: "The removal period shall be extended beyond a period of 90 days and the [noncitizen] may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). While the Ninth Circuit has "expressly decline[d] to endorse or reject any inferred *Zadvydas*-inspired limitation to § 1231(a)(1)(C)," it has analyzed that statute in the context of *Zadvydas* claims, holding that a habeas petitioner who "impedes" the Government's removal efforts has not met his or her burden under *Zadvydas* of "showing that there is no significant likelihood of removal in the reasonably foreseeable future" *Pelich*, 329 F.3d at 1060 (citation modified). In the same vein, *Zadvydas* claims fail when a habeas petitioner "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government," as required by Section 1231(a)(1)(C). *Lema v. I.N.S.*, 341 F.3d

853, 856 (9th Cir. 2003). But Section 1231(a)(1)(C) "pertains only to intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order, not to an alien's good faith attempt to make use of legally available judicial review and remedies." *Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008). And "it is the burden of the government to document the conduct that extends the removal period." *Id.* at 1231 n.4.

Turning to Duran Simon's *Zadvydas* claim, the Parties agree that he has been detained longer than six months, *see* Dkt. No. 5 ¶¶ 20, 21. Thus, his detention is not presumptively reasonable. Moreover, Duran Simon has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. Spain denied his request for travel documents in 2009, Cuba declined repatriation, and Mexico will accept him only if he goes "voluntarily." The Government is not pursuing removal to any other country at this time. *Id.* ¶ 23.

The Government argues that Duran Simon's *Zadvydas* claim cannot prevail because he has impeded its removal efforts under Section 1231(a)(1)(C). The Government's argument is not well taken. There is no basis to find that Duran Simon has "fail[ed] or refuse[d] to make timely application in good faith for travel or other documents necessary" for his departure, or that he has "conspire[d] or act[ed] to prevent [his] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Government points first to Duran Simon's refusal to sign certain ICE forms. But that argument is unsupported. The documents Duran Simon refused to sign are notices designed to inform him about the law and his rights and obligations under it; they are "not applications for travel documents or forms that would otherwise

appear to assist in his removal." *Hernandez v. U.S. Immgr. & Customs Enf't*, No. 3:26-cv-8-MMH-MCR, 2026 WL 776166, at *4 (M.D. Fla. Mar. 19, 2026). The Government fails to explain how his signature would have advanced a removal plan that, so far as the record shows, involves no travel documents and no request to the Mexican Government.

The Government's reliance on *Lema* and *Pelich* is misplaced. In those cases, the petitioners intentionally hindered the issuance of travel documents. But in cases where—as here—an immigration habeas petitioner "declin[es] to sign acknowledgment of being served with information about the law and his obligations," that choice "does not amount to affirmative misrepresentation or refusal to apply for travel documents as in *Lema* and *Pelich*." *Kucharevsky v. Blanche et al.*, 2:26-cv-02494-BAT, 2026 WL 2624089, at *3 (W.D. Wash. Aug. 13, 2026).

The Government also argues that Duran Simon has impeded his removal by refusing to go to Mexico. Dkt. No. 4 at 9–10. On the Government's telling, Mexico will take him if he agrees to go, so his refusal is "the only impediment to his removal." Dkt. No. 5 ¶ 34. But the statute authorizes removal to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii). A country that will take a person only if he volunteers has not agreed to accept his removal; it has agreed to accept a volunteer. Declining to volunteer is not bad-faith obstruction. *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 53 (D.D.C. 2002) (A detained person's "simple and honest explanation that he did not want to return to a country to which he had no ties, without any

accompanying affirmative lack of cooperation, is not a refusal to cooperate that supports an extension of detention."). Here, the Government says only that Duran Simon "refused to be removed to Mexico" in Arizona, without saying what ICE did, what Mexico agreed to, or what he did to stop it. That is not enough to carry the Government's burden. *See Diouf*, 542 F.3d at 1231 n.4.

Nor does Duran Simon's statement that he would go to Mexico only if his habeas petition were denied show bad faith. Dkt. No. 5 ¶ 32. Seeking habeas relief is a "good faith attempt to make use of legally available judicial review and remedies." *Diouf*, 542 F.3d at 1232. And when he did agree to go, on August 3, 2026, the record does not show that ICE took any step to arrange his removal to Mexico in the five weeks that followed. Dkt. No. 5 ¶¶ 31–32. Thus, Section 1231(a)(1)(C) does not defeat Duran Simon's *Zadvydas* claim, nor does it independently support detention.

Citing *Zadvydas*, the Government also asserts "Petitioner's extensive criminal history . . . supports continued detention as necessary to protect the community." Dkt. No. 4 at 10 (citing 533 U.S. at 690–91). But the Government's argument conflicts with *Zadvydas*, which held that Section 1231(a)(6) does not authorize indefinite detention, *even if the agency makes a dangerousness finding* and believes "preventive detention" is appropriate. 533 U.S. at 691–92. The Supreme Court reasoned that the indefinite deprivation of human liberty, subject only to procedural protections found in administrative proceedings, raises a "serious" and "obvious" constitutional problem. *Id.* at 692. Indeed, "[t]he Constitution demands greater procedural protection even for property." *Id.*

The Government therefore has failed to rebut Duran Simon's showing under *Zadvydas*. Accordingly, his detention violates Section 1231(a)(6), and he must be released.

**3.2 Duran Simon's revocation of release and re-detention violates due process and 8 C.F.R. § 241.13(i).**

Duran Simon also argues that the revocation of his OSUP and his re-detention was unlawful. The Court agrees.

Applying the test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts in this district and elsewhere have repeatedly found that to comply with due process in revoking a noncitizen's OSUP, the Government must provide pre-deprivation notice and an opportunity to be heard. *See Abghari v. Hermosillo*, No. 2:26-cv-00269-JNW, 2026 WL 503317, at *3–4 (W.D. Wash. Feb. 24, 2026) (collecting cases); *Mirani v. Bondi*, No. 2:26-cv-00623-JNW, 2026 WL 905038, at *3 (W.D. Wash. Apr. 2, 2026) (collecting cases); *Nguyen v. Bondi*, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) ("Applying the Mathews test, several courts in this district have found due process violations where the government—despite not having a valid travel document or other individualized basis for re-detention—re-detained noncitizens with a final order of removal without notice and a meaningful opportunity to respond."). The Government's return acknowledges that courts in this District have so held. Dkt. No. 4 at 11.

This case is not meaningfully distinguishable from all the others. Incorporating and applying its prior reasoning, the Court finds that under *Mathews*, Duran Simon was entitled to adequate notice and a pre-deprivation hearing before

the Government revoked his OSUP and re-detained him. *See, e.g., Abghari*, 2026 WL 503317, at *3–4. And by failing to provide either, the Government violated his constitutional right to procedural due process.

Separately, the Court find that ICE violated Duran Simon's due process rights by failing to comply with its own regulations governing OSUP revocation. Courts across the country have found due process violations where ICE violates its own regulations in revoking an OSUP. *See, e.g., Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165–66 (S.D. Cal. 2025); *Roca v. Scott*, No. C25-2551-KKE-SKV, 2026 WL 60412, at *4 (W.D. Wash. Jan. 8, 2026); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *7–8 (D. Md. Aug. 25, 2025); *Grigorian v. Bondi*, No. 25-cv-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025). Here, the parties agree that 8 C.F.R. § 241.13(i) applies and permits the Government to revoke an OSUP if it finds that the noncitizen has violated his or her conditions of release, or if it finds that circumstances have changed such that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). The regulation requires ICE to notify the noncitizen of the reasons for revocation and to conduct an interview "to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification" and to present evidence. 8 C.F.R. § 241.13(i)(3).

Duran Simon claims that the Government did not follow these procedures or make the required findings. *See* Dkt. No. 1 at 28. The Government does not refute his claims. Additionally, the Government does not assert that Duran Simon

received an interview where he was allowed to present evidence and contest the reasons for his re-detention. Thus, on this record, the Court finds that the Government violated 8 C.F.R. § 241.13(i) when it revoked Duran Simon's OSUP and re-detained him.

### 3.3 Duran Simon's claims challenging the punitive nature of the Government's third-country removal policy are denied without prejudice.

On this record, Duran Simon has not shown that the Government's third-country removal policies are punitive such that they violate his Fifth and Eighth Amendment rights for the same reasons this Court stated in *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025). The Court adopts its prior reasoning and dismisses those grounds for habeas relief without prejudice.

### 3.4 The Court grants Duran Simon's request for injunctive relief in part.

#### 3.4.1 The Government must provide notice and a hearing before re-detention.

Having found Duran Simon's detention unlawful, the Court further finds that protection against re-detention is necessary to make its order effective. Each of the four *eBay* factors supports this conclusion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). First, Duran Simon suffered irreparable injury when he was illegally detained. Second, no monetary remedy can compensate for that deprivation of physical liberty. Third, the balance of the hardships favors Duran Simon, as the injunction requires only that Respondents comply with constitutional due process requirements and their own regulations before re-detaining him. And

fourth, the public interest is served by an order requiring Respondents to follow the law before depriving a person of liberty.

Additionally, the Court is convinced that relief is needed because "there exists [a] cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 397 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see Rahmani v. Scott*, No. 2:26-cv-02423-JNW, 2026 WL 2581952, at *5 (W.D. Wash. Sept. 1, 2026). ICE has already detained Duran Simon for months after his removal ceased to be reasonably foreseeable, and absent injunctive relief, he may be re-detained on the same record. This is especially true considering the Government has not changed its OSUP revocation and re-detention practices, even though courts across the country have repeatedly found them unlawful. *See Rahmani*, 2026 WL 2581952, at *5 ("[I]t is well known in this District that ICE revokes noncitizens' release and detains them without due process.") (collecting cases); *Nguyen v. Blanche*, No. C26-0917-KKE, 2026 WL 972734, at *4 (W.D. Wash. Apr. 10, 2026) ("Given Respondents' well-documented and widespread failures to comply with 8 C.F.R. § 241.13(i)(3), Petitioner's concerns regarding re-detention without process are not speculative.") (collecting cases).

Accordingly, the Court will enjoin Respondents from re-detaining Duran Simon without first providing him adequate notice of the basis for re-detention and a pre-deprivation hearing before an immigration judge to determine whether re-detention is appropriate. Respondents will bear the burden of justifying revocation is warranted by clear and convincing evidence. *Nguyen*, 2026 WL 972734, at *5 (citing *J.E.H.G. v. Chesnut*, No. 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14

(E.D. Cal. Dec. 9, 2025) ("Since it is the Government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.")). Additionally, the Government may not revoke Duran Simon's OSUP and re-detain him without complying with 8 C.F.R. § 241.13(i).

#### 3.4.2 The Government must release Duran Simon subject to the conditions of his most recent OSUP.

Duran Simon asks that the Court order his release subject to the conditions of his prior OSUP, or in the alternative, that the Government be enjoined from placing an ankle monitor on him as a condition of release without first meeting certain requirements. Dkt. No. 1 at 32. The Government responds that ankle monitors are lawful and may be required as a condition of release. Dkt. No. 4 at 14. "[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation modified); *see also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (citation modified). And in the context of immigration habeas cases, courts have found that successful petitioners are entitled to release on their most recent conditions of release. *See, e.g., Veliz-Pina v. Semaia*, No. 5:26-cv-04590-MBK, 2026 WL 3012453, at *7–8 (C.D. Cal. Oct. 6, 2026); *Singh v. Noem*, No. 2:26-cv-00651, 2026 WL 925627, at *5 (W.D. Wash. Apr. 6, 2026) (collecting cases); *Rodriguez-*

*Guadarrama v. ICE Field Office Dir.*, No. C26-0813, 2026 WL 1492722, at *3 (W.D. Wash. May 28, 2026). This remedy restores the status quo, as much as possible.

The Ninth Circuit has applied that narrow reading to nearly identical facts. In *Ibarra-Perez v. United States*, the government removed a Cuban national to Mexico, a country his removal order did not name, and the Ninth Circuit held that Section 1252(g) did not bar his suit challenging that removal. 154 F.4th 989 (9th Cir. 2025), reh'g en banc denied, 179 F.4th 743 (9th Cir. 2026). Because the removal order "nowhere mentioned Mexico," the government's later choice of Mexico was a "separate and post-hearing decision," not the execution of the order. *Ibarra-Perez*, 179 F.4th at 744–45 (Hawkins & W. Fletcher, JJ., respecting the denial of rehearing en banc) (quoting 154 F.4th at 1000). So too here: Duran Simon's removal order names Spain and Cuba, not Mexico. Dkt. No. 5 ¶ 12. Duran Simon does not ask the Court to stop the Government from executing his removal order; he asks only that any removal to a country his order does not name come with the process the law requires.

Accordingly, the Government must release Duran Simon on the conditions of his most recent OSUP, issued April 23, 2025. Dkt. No. 6-3. Those conditions include participation in ICE's Alternatives to Detention program with electronic monitoring. *Id.* at 2. Because restoring the status quo means restoring those conditions, the Court denies Duran Simon's alternative request to bar GPS monitoring.

**3.4.3 The Government must follow the law governing third-country removal.**

Duran Simon asks the Court to require the Government to provide certain process before removing him to a third country. The Court granted this same request under materially similar circumstances in *Arenado-Borges*, 2025 WL 3687518, at *4–5. There, the Court concluded that before removal to a third country, a noncitizen "must be provided constitutionally and statutorily compliant notice, an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge." *Id.* The Court adopts its prior reasoning and grants the same relief here.

The Government argues that 8 U.S.C. § 1252(g) strips the Court of jurisdiction to order this relief. Dkt. No. 4 at 13. The Court disagrees. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted this provision narrowly, limiting it to only "three discrete actions": the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (citation modified) (emphasis in original). The Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned courts not to adopt an interpretation that would "sweep in any claim that can technically be said to 'arise from'" the three, listed actions, *Jennings v. Rodriguez*,

583 U.S. 281, 294 (2018); *see AADC,* 525 U.S. at 482. Additionally, numerous courts in the Ninth Circuit have rejected the same jurisdictional argument the Government raises here, finding "it is within the court's jurisdiction to prevent removal absent statutory and constitutional due process requirements." *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1134 (E.D. Cal. 2025) (collecting cases). The Court adopts the same reasoning and finds it "has jurisdiction to review the issues raised by [Duran Simon's] habeas petition," including "Respondents' attempt to remove him to [Mexico], for which there exists no final removal order." *Id.*

#### 3.4.4 The rest of Duran Simon's requested injunctive relief is denied without prejudice.

Some of the injunctive relief Duran Simon requests seems to go beyond what is needed to protect him from future constitutional violations—at least based on this record. For instance, Duran Simon asks the Court to enjoin Respondents from removing him unless they obtain a valid travel document for his removal to Cuba and offer him the opportunity to leave on his own first. Dkt. No. 1 at 32. But it is not clear how these additional procedures will prevent constitutional violations, especially considering the Court will require the Government to provide pre-deprivation process before any future re-detention. *See Nguyen*, 2026 WL 972734, at *6.

Similarly, Duran Simon asks the Court to require the Government to prove at any future re-detention hearing that he is a flight risk or danger to the community based on changed circumstances. But he does not adequately explain how that requirement fits into the statutory or regulatory scheme governing OSUP

revocation, *see* 8 C.F.R. § 241.13(i). Additionally, the Court notes that it has found Duran Simon's detention unlawful under *Zadvydas*—"a conclusion that holds whether or not the Government thinks he is dangerous or likely to flee." *Rahmani*, 2026 WL 2581952, at *6; *see Zadvydas*, 533 U.S. at 690–91 (holding that neither "protecting the community" nor "ensuring the appearance of aliens at future immigration proceedings" are a "sufficiently strong special justification for indefinite civil detention—at least as administered under [8 U.S.C. § 1231(a)(6)]"; reminding the Government that immigration proceedings are civil—not criminal—in nature). Thus, the Court declines to impose this relief.

## 4. CONCLUSION

Accordingly, the Court GRANTS the habeas petition IN PART and ORDERS:

1. The Government must release Petitioner from custody within TWENTY-FOUR (24) HOURS of this order under his previous conditions of release and must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention. Respondents must file a status report within FORTY-EIGHT (48) HOURS of this order confirming their compliance.
2. Respondents are ENJOINED from re-detaining Petitioner without first providing adequate notice of the reasons for re-detention and holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing that re-detention is warranted under the applicable law by clear and convincing evidence, based on changed circumstances.

Additionally, the Government may not revoke Petitioner's OSUP and re-detain him without complying with applicable statutes and regulations, including 8 C.F.R. § 241.13(i).

3. Respondents are ENJOINED from removing Petitioner to a third country without notice and a meaningful opportunity to respond, which includes the opportunity to seek relief from such removal in reopened removal proceedings before an Immigration Judge.

Dated this 10th day of November, 2026.

Jamal N. Whitehead
United States District Judge